UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re<br><br>TERRY MANUFACTURING<br>COMPANY INC.,<br><br>    Debtor. | Case No. 03-32063-WRS<br>Chapter 7 |
| In re:<br><br>TERRY UNIFORM<br>COMPANY, LLC.<br><br>    Debtor. | Case No. 03-32213 |
| J. LESTER ALEXANDER III,<br>TRUSTEE OF TERRY<br>MANUFACTURING COMPANY, INC.<br>AND TERRY UNIFORM COMPANY,<br>LLC.<br><br>    Plaintiff.<br><br>v.<br><br>DELONG, CALDWELL, NOVOTNY<br>& BRIDGERS, LLC., et. al.,<br><br>    Defendants. | Adv. Pro. No. 04-3135-WRS |

**MEMORANDUM DECISION**

    This Adversary Proceeding is before the Court upon the second motion to transfer venue which has been filed by the Defendants. (Doc. 42). On February 8, 2005, the Court denied the first motion to transfer venue. (Docs. 13, 14). The Plaintiff has subsequently amended his

complaint adding Earnest H. DeLong, Jr., individually as a named Defendant and adding a cause of action for malpractice. On March 14, 2005, the Court granted the Plaintiff leave to serve his first amended complaint. (Docs. 33, 34). On May 26, 2005, Plaintiff again moved for leave to amend his complaint.[1] (Doc. 48). As that motion is not opposed by the Defendants, the Court will by way of a separate Order grant the Plaintiff leave to serve his second amended complaint. For the reasons set forth below, the Defendants' motion to transfer venue is DENIED.

## I. FACTS

The Court will first examine the affidavits of Earnest DeLong which have been filed in support of the motion to transfer venue. On May 16, 2005, the Defendants filed a "Motion to Dismiss Case or in the Alternative Transfer Venue or Abstain on State Law Claims." (Doc. 42). The Defendants submitted a Memorandum of Law in support of their motion. (Doc. 43). Attached as Exhibit A to the Memorandum is a seven-page Affidavit of Earnest H. DeLong, Jr., dated May 11, 2005. (Doc. 43, pp. 45-52). In Paragraph 4 of the Affidavit, DeLong states, under oath, among other things, that: "I have never practiced law in the State of Alabama."

In fact, on October 31, 2003, DeLong filed an "Objection of Winning Image, Inc. and Terry Screen Print, Inc., to Trustee's Motion to Approve Sale of Property Free and Clear of Liens," in the Terry Manufacturing bankruptcy case in this Court. (Case No. 03-32063, Doc. 207). As this Court is located in the State of Alabama, DeLong quite plainly practiced law here when he objected to the Trustee's proposed sale of property. Therefore, DeLong's sworn

---

[1] This complaint names two additional Defendants: (1) DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, L.L.C.

-2-

Case 04-03135   Doc 76   Filed 07/25/05   Entered 07/25/05 08:45:17   Desc Main
Document      Page 2 of 15

statement–that he had never practiced law in the State of Alabama–is not correct.

Terry Manufacturing, Inc., the Debtor in the underlying bankruptcy case,[2] had been in the business of manufacturing uniforms. Of particular interest, Terry Manufacturing had a contract to manufacture uniforms for McDonald's. A quantity of the uniforms were on hand at the time the bankruptcy case was filed. On August 21, 2003, J. Lester Alexander, III, the Trustee (who is also the Plaintiff in this Adversary Proceeding), filed a motion seeking this Court's approval to sell the McDonald's uniforms on hand, free and clear of liens and encumbrances. (Case No. 03-32063, Doc. 102). Acting on behalf of Winning Image, Inc., and Terry Screen Print, Inc., DeLong filed an objection in this Court to the Trustee's proposed sale of the uniforms, contending that the uniforms were the property of Winning Image, Inc., and Terry Screen Print, Inc., and not property of the bankrupt estate. (Case No. 03-32063, Doc. 207). Thus, DeLong's neglect to mention his earlier involvement in the Terry Manufacturing bankruptcy case is particularly dismaying because it may provide some support to the Trustee's contentions in this Adversary Proceeding.

On July 1, 2005, this Court denied the Plaintiff's motion to strike DeLong's Affidavit. (Doc. 58). It should be borne in mind that in denying the motion to strike the Court did not make

---

[2] One should keep in mind that Bankruptcy Courts use the term "case" differently than trial courts. When one files a petition in bankruptcy, the Court opens a case file and refers to the bankruptcy proceeding as a case. Bankruptcy cases may be filed under Chapter 7, 11, 12 or 13 of the Bankruptcy Code. The Terry Manufacturing bankruptcy case began as a case under Chapter 11 and was converted, on May 13, 2004, to a case under Chapter 7. A bankruptcy case may spawn any number of separate Adversary Proceedings, which are similar to civil actions. See, Rule 7001, et. seq., Fed. R. Bankr. P. This Adversary Proceeding is related to the Terry Manufacturing bankruptcy, Case No. 03-32063. For purposes of clarity, the term case should be used when referring to the Terry Manufacturing bankruptcy case and the term Adversary Proceeding should be used when referring to this or other Adversary Proceedings.

-3-

any determination as to whether the affidavit was true or not. Rather, this is the result of what one who was not schooled in the art of litigation may consider anomalous. The Court can strike an affidavit if it contains scandalous, indecent or impertinent matter. Rule 12(f), Fed. R. Civ. P. Moreover, it can also strike an affidavit if it is flawed as a matter of form, for example if the statement is not made on the basis of first hand knowledge. Rule 56, Fed. R. Civ. P. There is no provision under the Federal Rules of Civil Procedure that permits a Court to strike an affidavit because it is false. Thus, the anomalous result. A Court may strike an affidavit on a technicality but it cannot strike one that is not true.

In addition to DeLong's representation of Winning Image and Terry Screen Print in this Court, DeLong also represented Terry Manufacturing and others in a civil action in the Circuit Court of Randolph County, Alabama, styled <u>First Bank and Southtrust Bank v. Terry Manufacturing Company, Inc., et. al.</u>, Case No. CV-03-77. (Doc. 55, Exhibit 3). Moreover, DeLong was counsel of record in yet another civil action, again in the Circuit Court of Randolph County, Alabama, styled <u>Roosevelt McCorvey, et. al. v. Roy Terry and Rudolph Terry</u>, Civil Action No. CV2003-108. (Doc. 55, Exhibit 5).[3]

DeLong filed a second affidavit on June 13, 2005. (Doc. 50). In this affidavit DeLong admits his participation in one of the suits in Randolph County (Case No. CV-03-77) but ignores his participation in Case No. CV2003-108 and makes no mention of his participation in the Terry Manufacturing bankruptcy case. (Case No. 03-32063, Doc. 207). DeLong nevertheless

---

[3] The Plaintiff included a copy of a letter dated November 24, 2003, from a lawyer for the Plaintiffs to Earnest H. DeLong, Jr., and George Beck which states, in part, that "I enjoyed meeting you in Wedowee, Alabama last Thursday." This is yet another indication that DeLong practices law in Alabama.

maintains that he has never practiced law in the State of Alabama.[4] DeLong has appeared as counsel of record in at least three separate cases in Alabama courts (two civil actions in Randolph County and the Terry Manufacturing bankruptcy case here) yet he maintains that he has never practiced law in the State of Alabama. In all three of these episodes, DeLong entered appearances in courts in Alabama and filed pleadings on behalf of clients. DeLong's assertion, that this is not the practice of law, is wholly without merit. The Court finds that DeLong has practiced law in the State of Alabama, his affidavits notwithstanding.

## II. IN PERSONAM JURISDICTION

While the Defendants do not directly challenge this Court's jurisdiction, they appear to do so obliquely on pages 31 and 32 of their memorandum. (Doc. 43). The Defendants claim that they do not have minimum contacts with the State of Alabama, which strongly suggests that they contend that the Court lacks in personam jurisdiction.

For purposes of determining whether this Court has in personam jurisdiction, the Court looks to whether the Defendants have sufficient minimum contacts with the United States rather than the State of Alabama. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 947 (11th Cir. 1997)(where federal law provides for nationwide service of process, courts look to minimum contacts with United States); Warfield v. KR Entertainment, Inc., (In re:

---

[4] DeLong states that: "In my prior Affidavit, I stated that I had never sought to be licensed with the Alabama State Bar and I have never practiced law in the State of Alabama. I re-affirm those statements and believe them, in my personal opinion, to be true and correct. Nonetheless, I was involved in a case filed in the Circuit Court of Randolph County Alabama, styled First Bank v. Terry Manufacturing Co., Case No. CV-03-77."

-5-

Federal Fountain), 165 F.3d 600 (8th Cir. 1999); Gentry Steel Fabrication, Inc., v. Howard S. Wright Construction (In re: Gentry Steel), 325 B.R. 311, 316-17 (Bankr. M.D. Ala. 2005). As federal law provides for nationwide service of process, the appropriate analysis is minimum contacts with the United States rather than with the State of Alabama. Rule 7004(d), Fed. R. Bankr. P. In BCCI Holdings, the Eleventh Circuit stated that "[a] defendant's 'minimum contacts' with the United States do not, however, automatically satisfy the due process requirements of the Fifth Amendment. (citation omitted). There are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." BCCI Holdings, at 947. As the facts of this case do not establish such rare circumstances, the Court finds that it has in personam jurisdiction over the Defendants.

### III. FORUM NON CONVENIENS

#### A. General Considerations

The jist of the pending motion to transfer is that the Defendants contend that this Adversary Proceeding should be transferred to Georgia for the convenience of the parties or in the interest of justice. See, 28 U.S.C. § 1412. This Court has previously denied a motion made upon these grounds. (Docs. 13, 14). As a cause of action for attorney malpractice has been added and additional, although related parties have been added, the Court will again consider transfer.

-6-

On pages 4 and 5 of this Court's February 8, 2005, Memorandum Decision (denying the previous motion to transfer), this Court set forth the following:

> In determining the propriety of granting a motion to transfer the venue of an Adversary Proceeding, the Court will consider the following § 1412 "interest of justice" factors: (a) the economics of estate administration; (5) the presumption in favor of the "home court;" (c) judicial efficiently; (d) the ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders by those familiar with its laws; (f) the enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum; In re: Bruno's Inc., 227 B.R. 311, 324-26 (Bankr. N.D. Ala. 1998); With respect to the second prong of § 1412, "convenience of the parties," the Court will consider the following factors; (a) the location of the plaintiff and defendant; (b) the ease of access to necessary proof; (c) the convenience of witnesses; (d) the availability of subpoena power for the unwilling witnesses, and; (e) the expenses related to obtaining witnesses. (Doc. 13).

### B. Judicial Efficiency

The overriding concern here, as it was when the February 8 Order was entered, is judicial efficiency. (Doc. 13). The undersigned has spent hundreds of hours on the Terry Manufacturing bankruptcy cases and several dozen related Adversary Proceedings. Transfer of this Adversary Proceeding to another court would be extraordinarily wasteful as another judge would necessarily have to spend considerable time and effort to become familiar with the Terry Manufacturing bankruptcy proceedings, as they make the backdrop of this Adversary Proceeding. For this reason alone, retention of this Adversary Proceeding is heavily favored.

The Defendants correctly note that a number of the preference actions have been settled.

They contend that this development militates against the continued centralization of the remaining adversary proceedings in this Court and that with that changed circumstance, the equities now weigh in favor of transfer, even if they had not when the Court previously denied transfer. The Court notes that this case is similar in many respects to another Adversary Proceeding pending here styled <u>Alexander v. The Steel Law Firm, P.C.</u>, Adversary Proceeding No. 04-3114. In that Adversary Proceeding, as in this one involving the DeLong firm, it is alleged that massive amounts of attorney's fees have been paid by Terry Manufacturing which were actually owed by Roy Terry, Rudolph Terry or one or more of the affiliated corporations. Thus, there is a common thread to these two cases. Moreover, the most probable defense in the <u>Steel</u> Adversary Proceeding, as in this Adversary Proceeding, is that the services provided were of actual benefit to Terry Manufacturing. As the Terry Manufacturing bankruptcy case is pending in this Court, this Court is in the best position to determine whether the subject legal services were of benefit to Terry Manufacturing. Indeed, a Court in Georgia would have to expend considerable time to learn about the Terry Manufacturing case so that it could make this determination.

Also of interest are three consolidated Adversary Proceedings styled <u>Alexander v. The Peoples Bank</u>, Adversary Proceeding 04-3061; <u>Alexander v. First Tuskegee Bank</u>, Adversary Proceeding 04-3062; and <u>Alexander v. Bank of Wedowee</u>, 04-3064. In these three Adversary Proceedings it is alleged that fraudulent transfers were made to these banks by Terry Manufacturing. There may be a common thread here. Roy Terry has, by his own admission, defrauded his creditors of more than $20 million. It is doubtful whether he could have done this without the active participation of bankers and other professionals. Whether DeLong has

committed a fraud on the creditors of Terry manufacturing remains to be seen. We may now take as a given that a massive fraud has been perpetrated on the creditors of Terry Manufacturing. Given this established fact, and given the presence of related litigation, the interest of judicial economy heavily favors retention of this Adversary Proceeding in this Court.

The Defendants ignore a substantial benefit that will inure to them if all of these related Adversary Proceedings remain in this Court. By litigating these Adversary Proceedings here, the Trustee will not be able to take inconsistent positions. In the bankruptcy case of Bama Wood, Inc., Case No. 02-30132, the Court took a Chapter 7 Trustee to task for taking inconsistent litigating positions. See, Memorandum Decision dated April 9, 2004. (Case No. 02-30132, Doc. 114). To the extent that the Trustee points his finger at other Defendants in other related Adversary Proceedings, he may be exonerating the Defendants in this Adversary Proceeding. The interest of justice is served by requiring the Trustee to maintain a consistent litigation position.

### C. A Fair Trial

The Defendants argue that they cannot receive a fair trial here, citing prior statements of the Court to the effect that Roy and Rudolph Terry are not honest. As Rudolph Terry has been convicted of fraud and served time in a Federal prison and Roy Terry has entered a plea of guilty, having admitted to committing a massive fraud on the creditors, their dishonesty is well established.[5] The Court's familiarity with the reputations of Roy and Rudolph Terry through

---

[5] A detailed admission of Roy Terry's guilt may be found in his written plea agreement. United States v. Terry, in the United States District Court for the Middle District of Alabama, Case No. CR 3:05CR141-F. (Doc. 6).

-9-

more than two years of case history does not provide a basis for transfer. Familiarity with the principals of the debtor corporation is a desirable byproduct of the Court's familiarity with case history. The Defendants' claim that they cannot get a fair trial in this Court is without merit.

### D.  Local Controversies Should be Decided by a Judge Familar with Local Law

The Defendants argue that this case should be transferred as it involves questions of Georgia law. As judges in Georgia are more familiar with Georgia law than are judges in Alabama, transfer is favored as some of the claims in issue here arise under Georgia law (i.e. the professional liability claim and one of the fraudulent conveyance claims). This factor, in isolation, favors transfer, however it is outweighed by other factors.

### D.  Witness Availability/ Jury Trial / Enforceability of Judgment

The Defendants claim that two of their witnesses, Brian Steel and Jerry Thomas are residents of Georgia and may not be subpoenaed to appear in court in Alabama. This is correct, however they may be subpoenaed to appear for a deposition to be taken in Georgia. Rule 45(a)(1), Fed. R. Civ. P. In turn, their depositions may be offered into evidence at trial. This assumes that Steel and Thomas are unwilling to travel to Montgomery for trial, which may not be a valid assumption.

The Defendants further contend that this Adversary Proceeding should be transferred because they have demanded a jury trial and they will not consent to trial before a bankruptcy

-10-

judge. This does not pose a problem as a jury trial may be conducted by a District Judge in this District. Indeed, if this factor alone were determinative, most Adversary Proceedings would become subject to transfer as a bankruptcy judge cannot hear a jury trial absent the consent of all parties. See 28 U.S.C. § 157(e).

As a final matter, the Defendants contend that venue should be transferred because a judgment from this Court is not enforceable in Georgia. In the event the Trustee were to prevail here, and in the event that the Defendants were to refuse to honor this Court's judgment, adequate means exist to enforce any judgment which may be entered. 28 U.S.C. § 1963. The Defendants' claim that venue should be transferred because they would not honor an adverse judgment from this Court is without merit.

## VI. ABSTENTION

The Defendants contend that this Court should abstain from hearing this Adversary Proceeding on the grounds of permissive abstention which is governed by the provisions of 28 U.S.C. § 1334(c)(1), which provides as follows:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Court looks to 12 nonexclusive factors in making a determination under this provision: (1) the effect on the efficient administration of the bankruptcy estate; (2) whether state law issues predominate over the bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of related proceedings commenced in state court or other

-11-

non-bankruptcy courts; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feability of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; and (12) the presence in the proceeding of non-debtor parties.

The first factor, the efficient administration of the bankrupt estate would favor retention as the concentration of core proceedings in the home court is almost universally favored. It should be kept in mind that this Adversary Proceeding involves claims to avoid fraudulent conveyances and to avoid or recover preferences. See, 11 U.S.C. §§ 157(b)(2)(F), (H), as well as a claim for professional malpractice.

The second factor, whether state law issues predominate, likewise favors retention. There are state law issues in this Adversary Proceeding but there are substantial Federal Bankruptcy law issues as well. While there are state law issues present, they do not predominate.

The third factor, whether the state law issues are difficult or unsettled does not appear to be a factor here as the state law issues do not appear to be either difficult or unsettled. The fourth factor, whether there are related proceedings in state court is also not a factor as there are none. The fifth factor, the jurisdictional basis, it would appear that there may be diversity of citizenship (28 U.S.C. § 1332) jurisdiction in the District Court as well as jurisdiction pursuant to 28 U.S.C. § 1334. This factor does not have much weight but to the extent that it has some, it would favor

-12-

Case 04-03135   Doc 76   Filed 07/25/05   Entered 07/25/05 08:45:17   Desc Main
Document     Page 12 of 15

retention. The sixth factor, the degree of relatedness to the main case, would appear to favor retention. As demonstrated above, DeLong has appeared on behalf of other entities and taken a position in opposition to the bankruptcy estate of Terry Manufacturing. This factor would weigh in favor of retention. The seventh factor, the substance rather than the form of an asserted "core" proceeding, does not have any weight here.

The eighth factor, the feasibility of severing state law claims from core bankruptcy matters, weighs heavily in favor of retention. As discussed above, this Adversary Proceeding involves both core bankruptcy law questions as well as questions arising under Georgia law. As the Trustee has framed his claims, the alleged violation of DeLong's duty to his client–clearly a state law issue–is intertwined with the fraudulent conveyance issues, which are bankruptcy law issues. See, 11 U.S.C. §§ 544, 547, 548. If the claims were to be severed, the workload of this Court would not be appreciably diminished as the conflict of interest claims advanced by the Trustee would have to be examined both in this Court in the event a severance of the issues were granted. Severance of the claims is not appropriate as both this Court and the court who receives the professional liability claim would both have to consider the conflict of interest issues. Moreover, a court in Georgia would further have to consider the impact of DeLong's representation upon the Terry Manufacturing bankruptcy proceeding, duplicating work which will in any event have to be done here. The infeasibility of severing the issues heavily favors retention of all issues in this Court. Moreover, the eighth factor here outweighs all of the other factors together.

The ninth factor, the burden on the bankruptcy court's docket, has no weight. As severance of the state law claim and retention of the bankruptcy law claims would involve nearly

-13-

the same amount of work as simply retaining the entire Adversary Proceeding, severance would be of no benefit to this Court and would further burden a court in Georgia.

The tenth factor, forum shopping, is not a factor. The Trustee would rather litigate here while the Defendants would rather litigate in Georgia. It is understandable that each party would choose a forum that is more convenient, but this is not improper forum shopping on the part of either party.

The eleventh factor, the existence of a right to jury trial, is not a factor here as this Adversary Proceeding will necessarily be tried in a District Court in any event. As the Defendants have demanded a jury trial and as they have not consented to trial in Bankruptcy Court, if this Adversary Proceeding is retained, it will be tried in District Court. If the Adversary Proceeding were transferred to Georgia, it would be tried in District Court there. The twelfth factor, the presence of non-debtor parties, is also not a factor here. It appears that all of the named Defendants had some contact with Terry Manufacturing.

This Court will not abstain, under the doctrine of permissive abstention as set forth at 28 U.S.C. § 1334(c)(1). By far the strongest factor here is the eighth factor, which deals with the feasibility of severing core from noncore claims. As set forth in this Court's February 8, 2005 Order, the core fraudulent conveyance claim will not be transferred from this Court. Were the Trustee's action solely a professional liability action, a noncore proceeding, the Defendants could no doubt make a strong argument for transfer. The problem here is that this Court will not transfer the core proceeding and the noncore professional liability action is so closely related that it is not feasible to sever and transfer only that proceeding. For these reasons, the Court will retain all claims in this Adversary Proceeding and deny abstention.

-14-

# V. CONCLUSION

The Court finds that it has in personam jurisdiction over the Defendants because they have contact with the United States and because there is nothing unduly burdensome in requiring the Defendants to litigate here. As bankruptcy courts in general are reluctant to transfer core bankruptcy proceedings, and as this Adversary Proceeding contains a fraudulent conveyance action, a core proceeding, the Court will not transfer the fraudulent conveyance action. The Court considered the possibility of severing the claims and transferring the noncore professional liability claim, as it involves only questions of Georgia law, but ultimately decided against severance and transfer because of the close connection between the two claims. The interest of judicial economy would not be served by a transfer which would nearly double the workload for all concerned. For these reasons, the Defendants' motion is DENIED. The Court will enter a separate Order consistent with this Memorandum Decision.

Done this 22nd day of July, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Brent B. Barriere, Attorney for Plaintiff
   J. Flynn Mozingo,
   Robert F. Northcutt, Attorneys for Defendants