# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Case No. 03-32063 |
| TERRY MANUFACTURING COMPANY INC., | |
|     Debtor. | |
| In re: | Case No. 03-32213 |
| TERRY UNIFORM COMPANY, LLC, | |
|     Debtor. | |
| J. LESTER ALEXANDER III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC | Adv. Pro. No. 04-3135 |
|     Plaintiff, | |
| v. | |
| DELONG, CALDWELL, NOVOTNY, & BRIDGERS, LLC, et. al. | |
|     Defendants. | |

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the Plaintiff's Motion to Compel Production of Documents. (Doc. 89). The Defendants have not filed a brief in response to the Plaintiff's motion and supporting memorandum, however they do oppose the motion to compel. The Court heard oral argument on this matter on September 20,

2005. (Doc. 92). For the reasons discussed below, the Plaintiff's motion to compel is GRANTED.

## I.  FINDINGS OF FACT

The Plaintiff in this Adversary Proceeding, Trustee of the Bankruptcy Estate of Terry Manufacturing Company Inc. ("Terry Manufacturing")[1], is seeking to recover damages and the disgorgement of professional fess in excess of $860,000.00 allegedly arising from acts of professional malpractice and fraudulent conveyances involving the Defendants Earnest H. Delong and DeLong, Caldwell, Novotny & Bridgers L.L.C.[2] This Adversary Proceeding is one of two[3] brought by the Trustee which alleges that substantial amounts of attorney's fees have been paid by Terry Manufacturing which were actually owed by the former officers of the debtor corporation, Roy and Rudolph Terry. The civil litigation which spawned the attorney's fees at issue in this Adversary Proceeding is styled *Commercial Factors of Atlanta v. Terry Manufacturing, et al.*, Case No. 99-A-10650-5 ("Commercial Factors Litigation"). The Defendants in this Adversary Proceeding simultaneously represented the interests of both Terry Manufacturing and Rudolph Terry[4] in the Commercial Factors Litigation.

---

[1] Terry Manufacturing filed a voluntary Chapter 11 petition in this Court on July 7, 2003. (Case No. 03-32063, Doc. 1). Terry Uniform filed a voluntary Chapter 11 petition on July 22, 2003. (Case. No. 03-32213, Doc. 1). Both cases have subsequently converted to a case under Chapter 7.

[2] The Trustee amended his complaint naming two additional Defendants: (1) DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, L.L.C. (Doc. 46).

[3] See *Alexander v. The Steel Law Firm, P.C.*, Adversary Proceeding No. 04-3114.

[4] As a result of the same conduct which lead to the Commercial Factors Litigation, Rudolph Terry was indicted in a federal criminal action styled *USA v. Pouncey, et. al.*, in the United States District Court for

This present dispute involves two facsimiles, both of which have been withheld by the Defendants based upon an assertion of the attorney-client privilege[5]. The first document is a three page facsimile, dated June 19, 2002, from Rudolph Terry to his lawyers in the Commercial Factors Litigation, Earnest H. Delong, Jr. and Jerry Thomas. (Doc. 89, Ex. A). Attached to this facsimile is a letter from Jon Pouncey, Rudolph Terry's co-defendant in the criminal case, regarding questions to ask Rudolph Terry's lawyers concerning litigation. (Doc. 89, Ex. A). Jon Pouncey was never a client of Earnest Delong or Jerry Thomas. This document has been withheld by the Defendants based upon the attorney-client privilege.

The second document is a seven page facsimile dated August 20, 2003, from Rudolph Terry to attorneys Brian Steel[6], Earnest H. Delong, Jr., and Jerry Thomas. (Doc. 89., Ex. A). This facsimile contains attorney notes regarding the potential testimony of Rudolph Terry concerning his criminal prosecution and its possible relationship to the Commercial Factors Litigation. (Doc. 89, Ex. A). The Defendants have withheld this document based upon both the attorney-client privilege and the work product privilege. (Doc. 89, Ex. A). The Court will now address whether it is appropriate to compel the production of these two documents.

---

the Northern District of Georgia, Case No. 1:03-CR-00055-CC-ECS-ALL. Rudolph Terry ultimately pled guilty and served time in a federal prison in Montgomery, Alabama.

[5] It was noted at the September 20, 2005 telephonic hearing that the Defendants have willingly produced a substantial number of litigation files related to their representation of Rudolph Terry and Terry Manufacturing.

[6] The Trustee has also initiated an Adversary Proceeding against Brian Steel and The Steel Law Firm, P.C., seeking the recovery of payments that were made by Terry Manufacturing on behalf of Rudolph Terry in relation to his criminal indictment. (Adversary Proceeding No. 04-3114).

## II. CONCLUSIONS OF LAW

### A. The Attorney Client Privilege

First, it should be noted that Georgia law is particularly instructive in this case because the Commercial Factors Litigation, which is at the core of the allegations made by the Trustee in this Adversary Proceeding, took place in the State of Georgia. Furthermore, most if not all of the services provided to Rudolph Terry in relation to the Commercial Factors Litigation occurred in Atlanta, Georgia, the place of residence for Mr. Delong and where the Defendant law firm is located.

A claimant attempting to invoke the attorney-client privilege must show the following:

> 1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made (a) is [a] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Seebeck v. GMC.*, 1996 U.S. Dist. LEXIS 22629, at *6 (N.D. Ga. May, 17, 1996)(citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir.Fla. 1990), *cert denied*, 498 U.S. 976, 112 L. Ed. 432, 111 S. Ct. 451 (1990); *see also Automed Techs., Inc. v. Knapp*

4

*Logistics & Automation, Inc.*, 2005 U.S. Dist. LEXIS 17485, at *9-11 (N.D. Ga. Aug. 1, 2005); *United States v. Wells*, 929 F. Supp. 423, 424-25 (S.D. Ga. 1996); *Freiermuth v. PPG Indus., Inc.*, 218 F.R.D. 694, 698 (N.D. Ala. 2003).

The attorney-client privilege belongs to the client, not the attorney. *Peterson v. Baumwell*, 202 Ga. App. 283, 285 (1991). A corporation is a client for purposes of invoking the attorney-client privilege. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 (5th Cir. 1970). Furthermore, with respect to a corporation, the power to waive the attorney-client privilege is held by existing corporate management. *In re: Michigan Boiler & Engineering Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988). When a corporation becomes a debtor in bankruptcy and a trustee is appointed, the trustee displaces existing management. Id. Stated another way, once a corporation files a bankruptcy petition and a Trustee is thereafter appointed, the power to waive the attorney-client privilege rests with the Trustee of the corporate debtor. See also *Diamant v. Sheldon L. Pollack Corp.*, 216 B.R. 589, 592 (Bankr. S.D. Tex. 1995)(citation omitted)(stating that "a Chapter 7 Trustee of a corporation has control over the corporate attorney-client privilege and the power to waive that privilege with respect to prebankruptcy communications"); *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re: Am. Metrocomm)*, 274 B.R. 641, 654 (Bankr. D. Del. 2002); *Turner v. Davis, Gillenwater & Lynch (In re: Investment Bankers, Inc.)*, 30 B.R. 883, 886 (Bankr. D. Colo. 1983).

The question arises whether the attorney-client privilege is applicable where two clients have been jointly represented by an attorney. The law is well settled that the

attorney-client privilege is not applicable where two clients have been jointly represented by an attorney, and the interest of those clients subsequently becomes adverse to one another. The Court in *SIPA Protection Corp. v. Kushnir & Co.*, 246 B.R. 582, 588 (Bankr. N.D. Ill. 2000) stated this rule as follows:

> Among co-clients, the attorney client privilege is narrowed substantially. Under the "joint defense doctrine", if the same lawyer jointly represents two or more clients with respect to the same matter, those clients have no reasonable expectation that their communications to the lawyer with respect to the joint matter will be kept secret from each other. *In re Madison Management Group, Inc.*, 212 B.R. 894 (Bankr. N.D. Ill. 1997).

*SIPA Protection Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 588 (Bankr. N.D. Ill. 2000). See also *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 171 (5th Cir. 1979)(where prior representation was joint, neither of the parties can assert the attorney-client privilege against the other as to matters comprehended by that joint representation); see also *Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re: Hechinger Investment Co. of Delaware)*, 285 B.R. 601, 612 (D. Del. 2002)("[g]enerally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confidential communications are not within the privilege in subsequent adverse proceedings between the co-clients")(citing *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 137 (1996); *In re: Mirant Corp.*, 326 B.R. 646, 649-50 (Bankr. N.D. Tex. 2005)("in a case of a joint representation of two clients by an attorney, one client may not invoke the privilege against the other client in litigation between them arising from the matter in which they were jointly represented")(citation

omitted); *Bass Pub. Ltd. Co. v. Promus Cos.*, 868 F. Supp. 615, 620 (S.D.N.Y. 1994)("[w]here there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them")(citations omitted); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970)("[i]n many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other"); *United States v. Moscony*, 697 F. Supp. 888, 894 (E.D. Pa. 1988)(holding that the exception to the attorney-client privilege for suits between former clients squarely applies when former clients subsequently face one another as adverse parties in litigation brought by any one of them); *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 393 (S.D. Tex. 1969)("information imparted to the common attorney relating to the subject of the joint representation is imparted for the mutual benefit of all the joint clients and is therefore not privileged against any of them"); *Arce v. Cotton Club of Greenville*, 1995 U.S. Dist. LEXIS 21539, at *7 (N.D. Miss. Jan. 13, 1995)(stating that "neither the attorney-client privilege nor the obligation of confidentiality is absolute, but may be waived where one attorney acts for two or more parties having a common interest").

The Courts of Georgia have consistently recognized this exception to the attorney-client privilege. *See In re: Mirant Corp.*, 326 B.R. 646, 650 (noting that Georgia courts have consistently recognized the rule that attorneys who represent two clients in the same matter cannot keep confidences of one respecting the matter from the other)(citing *Scoggins v. Powerll, Goldstein, Frazer & Murphy (In re: Kaleidoscope,*

*Inc.*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981), *rev'd on other grounds* 25 B.R. 729 (N.D. Ga. 1982); <u>Gearhart v. Etheridge</u>, 232 Ga. 638, 208 S.E.2d 460, 462 (1974); <u>Peterson v. Baumwell</u>, 202 Ga. App. 283, 414 S.E.2d 278, 280 (Ga. Ct. App. 1991); <u>Atwood v. Sipple</u>, 182 Ga. App. 831, 357 S.E.2d 273, 276 (1987).

The present case falls precisely within the scope of this exception to the attorney-client privilege. Rudolph Terry and Terry Manufacturing were simultaneously represented by the Defendants in the Commercial Factors Litigation. In accordance with the aforementioned authorities, neither Terry Manufacturing nor Rudolph Terry could have had any expectation that their confidences concerning the Commercial Factors Litigation would be kept secret from one another in the event of subsequent litigation in which their interests would become adverse. The first document, a facsimile from Rudolph Terry to Earnest H. Delong and Jerry Thomas, which contained a letter from Jon Pouncey, is not protected by the attorney-client privilege. First, Jon Pouncey was not a client of the Defendants. Furthermore, even if the letter from Jon Pouncey to Rudolph Terry could be considered a statement by Rudolph Terry made to his attorneys through the doctrine of incorporation, that document cannot be withheld from the co-client, Terry Manufacturing. Following this rule to its conclusion, upon Terry Manufacturing's filing of a petition in bankruptcy the right to waive the attorney-client privilege passed from the corporate management of the Debtor to the Trustee. The same analysis applies to the second facsimile at issue in this case, a communication from Rudolph Terry to his attorneys Brian Steel, Earnest H. Delong, Jr., and Jerry Thomas. Neither of these documents can be withheld on the basis of the attorney-client privilege in light of the

prior joint representation of Terry Manufacturing and Rudolph Terry in the Commercial Factors Litigation.

## B. The Work Product Privilege

In addition to the attorney-client privilege, the Defendants have also asserted the work-product privilege[7] with regards to the second document, the facsimile from Rudolph Terry to his attorneys Brian Steel, Earnest H. Delong, Jr., and Jerry Thomas which contained attorney notes regarding litigation. (Doc. 89, Ex. A). The Court finds that the work-product privilege is inapplicable here. The work-product privilege does not give an attorney the right to withhold documents from his own clients. *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 320 (S.D.N.Y.1991)(citations omitted); *see also In re: Kaleidoscope, Inc.*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981), *rev'd on other grounds* 25 B.R. 729 (N.D. Ga. 1982), (observing that "the doctrine of 'work product' has no application to the situation in which a *client*, or the legal successor-in-interest to a former client, seeks to obtain documents and other things created or amassed by an attorney during the course of that attorney's representation of that client). The work product privilege is intended to protect an attorney's work product from invasion by adversaries,

---

[7] The federal work-product privilege is codified in Federal Rule of Civil Procedure 26(b)(3), which states the following:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

not clients. *See* *S.N. Phelps & Co. v. Circle K Corp. (In re: Circle K Corp.)*(noting that the purpose of the work-product privilege is to protect the adversary system rather than confidential communications). Given the purpose of the work-product privilege and the context in which it is now being asserted, the Court does not find that the law permits the Defendants to protect such documents from the scrutiny of their own former client.

### III. CONCLUSION

For the reasons above expressed the two facsimiles from Rudolph Terry are not protected by the attorney-client privilege or the work-product privilege. Accordingly, the Plaintiff's Motion to Compel Production of Documents is hereby GRANTED. (Doc. 89). The Court will enter an Order consistent with the conclusions of law set forth in this Memorandum Decision by way of a separate document.

Done this 30th day of September, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

Brent B. Barriere, Attorney for Plaintiff
J. Flyn Mozingo,
Robert F. Northcutt, Attorneys for Defendants